**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| JARROD RAYMOND, P.P.A. MOLLY RAYMOND; BRANDON RAYMOND, P.PA. MOLLY RAYMOND; MOLLY RAYMOND, and DENNIS DRAKE;<br><br>Plaintiffs<br><br>vs.<br><br>MARGARET GLORIA, Individually and in her Capacity as a Social Worker; STEPHANIE TERRY, Individually and in her Capacity as Supervisor; STATE OF RHODE ISLAND DEPT. of CHILDREN,YOUTH and FAMILIES; JAY D. LINDGREN, JR., in his Capacity as the Director of the RHODE ISLAND DEPT. of CHILDREN, YOUTH and FAMILIES;<br><br>Defendants. | C.A. No. 08-137S |

## PLAINTIFF'S RULE 16 STATEMENT

## BACKGROUND

The plaintiffs, Jarrod and Brandon Raymond are fifteen year old twins whom, at various times in their lives (including today) were in the temporary care, custody and control of the defendant State of Rhode Island Department of Children, Youth and Families (hereinafter DCYF). On or about November 1996, as a result of alleged neglect on the part of the plaintiff Molly Raymond, the DCYF placed the boys in the licensed foster home of Faith Sykes. They were four and one-half years old at the time. The DCYF licensed this home with the knowledge and belief that Faith Sykes and/or her husband Myron Smith would be the caretakers of any children placed in the home.

Over the course of the first seven months of this placement DCYF notes indicate few problems. Then, in the summer of 1997, Faith Sykes informed the DCYF licensing division

that she could not adequately care for the children. After some discussion, the social worker assigned to the boys, defendant Margaret Gloria and her supervisor, defendant Stephanie Terry, persuaded the licensing department into leaving the children in the Sykes home.

Shortly thereafter, DCYF records reflect unknown and unlicensed third parties having ongoing and regular contact with the children at the Sykes home. These records indicate that an individual known only as "thinman" was the adult at the Sykes home caring for the children during the day. Faith Sykes worked full time days at the post office and Mr. Smith was disabled.

These notes, reviewed regularly by defendants Margaret Gloria and Stephanie Terry, indicate that "thinman" presented the children for visitation, received the children upon their return, was given information as to how the visits with the mother went and was noted as the adult feeding and readying the children for their visits. Thinman's involvement with the twins was reported over a seven month period from November 1997 until May 27, 1998. At one point in the records the DCYF worker referred to the foster home as the "thinman foster home." On May 27, 1998 the boys were permanently removed from the home after showing up at school with belt marks on their arms and abrasions on other extremities.

During the subsequent DCYF investigation it was learned that the school's only adult contact for the boys was "thinman" and that they had never met the foster mom. Thinman, who's real name is Samuel Stevens, told the investigator that he lived in the Sykes home (in a third floor bedroom adjacent to the boys). At no time prior to the boy's removal did the DCYF investigate who "thinman" was, where he lived, or, the scope of his involvement with the children.

As part of the investigation the boys told of how "thinman" would take them into the basement and beat them with a belt if they were bad. The investigator went to the home and

found a four inch belt on a coach in the basement; exactly where the boys said it would be. The emergency room doctor found four to five inch wide bruises indicative of belt marks on both boys forearms and abrasions on other extremities. Initially Faith Sykes and Mr. Stevens were indicated for institutional neglect and abuse respectively. Yet for reasons unknown, and without a hearing, these indications were dismissed. The case was never referred to the Providence Police for investigation even though the DCYF is a mandatory reporter.

Seven months after the boys were returned to their mother they began acting out sexually. She contacted her social worker and the boys were brought to the Providence Center for an evaluation. The boys revealed additional sexual abuse in the home by “thinman,” were diagnosed with PTSD as a result of the abuse. The boys have spent much of their lives since then in hospital and/or residential settings.

## LEGAL BASIS OF CLAIMS AND PLAINTIFF’S BURDEN OF PROOF

### I. Negligence Claims

The DCYF’s temporary legal custody of Jarrod and Brandon Raymond creates the requisite relationship for negligence claims against these Defendants under the “special duty doctrine.” For these claims the plaintiff’s burden of proof includes:

(1) a state official has knowledge of the plaintiff or his situation;

(2) the state officials acted or failed to act in some way that was potentially injurious to a plaintiff; and

(3) the injury was a reasonably foreseeable consequence of the state's action or inaction. Schultz v. Foster-Glocester Regional School District, 755 A.2d 153, 155-56 (R.I. 2000)

**II. Substantive Due Process Claims**

When the state takes a person into its custody and holds him there against his will the substantive component of the due process clause imposes upon it a corresponding duty to assume responsibility for his safety and general well-being. DeShaney v. Winnebago County Dep't. of Social Services., 489 U.S. 189, 199-200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). From this case the "state created danger" doctrine has developed and is recognized in most Circuits. This Circuit has yet to see facts sufficient to support such a claim. Rivera v. State of Rhode Island, 402 F.3d 27, 35 (1st Cir. 2005). To prevail on a state-created danger claim most Circuits require that a plaintiff prove:

(1) the harm ultimately caused was foreseeable and fairly direct;

(2) a state actor acted with a degree of culpability that was deliberately indifferent to the danger;[1]

(3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general, and

(4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

[1] In some "state created danger" cases the plaintiffs must demonstrate that the state's actions *shock the conscience*. In this matter however, the DCYF had notice of "thinman's" involvement with the children over a seven month period, yet took no action. Therefore, a *deliberate indifference* standard is applicable. "In situations where actors have an opportunity to reflect and make reasoned and rational decisions, deliberately indifferent behavior may suffice to "shock the conscience." County of Sacramento v. Lewis, 523 U.S. 833, 851-852 (1998).

**III. Loss of Consortium Claim**

This claim is a separate and distinct claim from those of Jarrod and Brandon. The loss of consortium claim requires a finding on the part of the jury that the boys were in fact injured before they can consider Molly Raymond's derivative claim. Soares v. Ann & Hope of Rhode Island, Inc., 637 A.2d 339, 353 (R.I. 1994). Should the jury reach that conclusion, this plaintiff needs to prove by a preponderance of the evidence that the injury proximately caused the parent to suffer the loss of society and companionship of the injured minor(s). See generally, R.I.G.L. §9-1-41 (1997 Reenactment).

The plaintiffs believe the aforementioned facts and circumstances substantiate their negligence, substantive due process and loss of consortium claims.

April 25, 2008

Respectfully submitted,
Jarrod Raymond and Brandon Raymond,
P.P.A. Molly Raymond and Molly Raymond,
Plaintiffs

/s/Thomas L. Mirza
Thomas L. Mirza, Esq. No. 5653
Pelletier & Mirza, LLP
469 Angell Street
Providence, RI 02906
(401) 861-1743
(401) 861-1746
tmirza@pmlawprov.com

**CERTIFICATION**

I hereby certify that I have electronically mailed a true copy of the Plaintiff's Rule 16(a) Statement to Genevieve Allaire-Johnson, Esq., Spec. Asst. Attorney General, 150 South Main Street, Providence, RI 02903 at GAllaire@riag.ri.gov on this 25th day of April, 2008.

/s/Thomas L. Mirza