**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| J. R., a minor, P.P.A. MOLLY RAYMOND; B.R. a minor, P.P.A. MOLLY RAYMOND, and MOLLY RAYMOND;<br><br>Plaintiffs<br><br>vs.<br><br>MARGARET GLORIA, Individually and in her Capacity as a Social Worker; STEPHANIE TERRY, Individually and in her Capacity as Supervisor; STATE OF RHODE ISLAND DEPT. of CHILDREN, YOUTH and FAMILIES; PATRICIA MARTINEZ, in her Capacity as the Director of the RHODE ISLAND DEPT. of CHILDREN, YOUTH and FAMILIES;<br><br>Defendants. | ) | C.A. No. 08-137S |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF THEIR OBJECTION TO THE OFFICE OF THE CHILD ADVOCATE'S MOTION TO QUASH AND/OR THEIR MOTION TO OBJECT**

BACKGROUND

The plaintiffs, J.R. and B.R. were placed in the temporary care, custody and control of the defendant DCYF on or about November 1996 and placed in foster care. The twins were four years of age at the time. In May 1998, both boys arrived at school with linear bruises on their arms and abrasions on other extremities. They were immediately removed from the foster home by the DCYF pending further investigation. Upon completion of the investigation, the DCYF indicated the foster mother with "institutional neglect" and indicated Samuel Stevens, a caretaker, with "abuse." The removal from the home then became permanent. A third foster child in the home at the time was also removed. The plaintiffs instituted suit as a result of the abuse suffered in the home.

In conjunction with the aforementioned investigation and change in placement of the plaintiffs, the DCYF had the following mandatory statutory duties:

(d) The department ***shall forward immediately*** any reports of institutional child abuse and neglect to the child advocate who shall investigate the report in accordance with chapter 73 of title 42, and also to any guardian ad litem and/or attorney of record for the child.

(e) In the event that after investigation the department takes any action regarding placement of the child, ***the department shall immediately notify*** the child advocate of such action. R.I.G.L. 40-11-7(d)(e). (Emphasis added)

The plaintiffs subpoena sought the report(s) DCYF was statutorily obligated to forward to the Child Advocate pursuant to R.I.G.L. 40-11-7(d) and the results of Child Advocate's investigation. In addition, the plaintiffs sought the notice the Child Advocate should have received as a result of the twin's removal from the foster home (a change in placement).

The Office of the Child Advocate has moved to quash the subpoena and/or otherwise object on the grounds of confidentiality, undue burden and/or lack of specificity of the subpoena's language.

<u>ARGUMENT</u>

The subpoena was issued by plaintiff's counsel on behalf of their minor clients in a civil rights law suit. Any legal claim of privilege to this information inures to our clients, not the Office of the Child Advocate. The Rhode Island Supreme Court discussed the legislative intent of statutes that limit disclosure of juvenile records. In <u>Providence Journal v. Rodgers</u>, the court stated, "[T]he General Assembly clearly intended to prevent the identification of child victims of sexual assault in recognition of *their* protected status in our society. The Legislature's interest i*n protecting youngsters* from the stigmatization that may result from their public identification is evident.(fn7)" <u>Providence Journal v. Rodgers</u>, 711 A.2d 1131,

1137 (RI 1998) (Emphasis added) The legislative intent is clearly directed at preventing third parties access to a minor's information, not denying the minor themselves from access to records created as a result of their own circumstances. The plaintiffs initiated the suit, and this suit has nessecitated the need for the plaintiffs to disclose numerous records that would otherwise be confidential.

The Child Advocate cites R.I.G.L. §42-73-10 as the basis for the claim of confidentiality. The statute reads:

"All records of the child advocate pertaining to the care and treatment of a child shall be confidential. Information contained in those records may not be disclosed publicly in any manner that would identify individuals, *but records shall be available to persons approved, upon application for good cause*, by the family court." (Emphasis added) The Rodgers Court specifically cited R.I.G.L. §42-73-10 in footnote seven (7) as an example of these protections.[1] Clearly, if the Legislature allowed for an exception in R.I.G.L. §42-73-10 to "persons" upon an application for good cause, certainly the children themselves, through a lawsuit filed on their behalf, can acquire the records in this Court.

Furthermore, the documents requested are few in number, highly relevant to the plaintiffs' case and, since the Child Advocate has already undertaken to find them, cannot create an undue burden.

---

[1] Footnote seven reads: *See, e.g.*, G.L.1956 chapter 28 of title 12, "Victim's Rights," wherein "[t]he general assembly finds that it is necessary to provide child victims and witnesses in family, district or superior court with special consideration and treatment beyond that usually afforded to adults." § 12-28-9; G.L.1956 chapter 72 of title 42, addressing "Department of Children, Youth, and Families," which provides in pertinent part that "[a]ny records of the department pertaining to children and their families in need of service pursuant to the provisions of this chapter or for whom an application for services has been made shall be confidential and only disclosed as provided by law." § 42-72-8(a); G.L.1956 chapter 2 of title 38, addressing "Access to Public Records," which provides for the confidentiality of student records, § 38-2-2(4)(i)(A)(I); G.L.1956 chapter 73 of title 42, addressing "Office of the Child Advocate," which provides that "[a]ll records of the child advocate pertaining to the care and treatment of a child shall be confidential." § 42-73-10.

Admittedly, the subpoena was somewhat general in the records requested. The deposition is intended to be essentially a "records keeper" deposition wherein the Child Advocate's testimony would be limited to foundational questions regarding the documents and the purpose for which they receive them. A record would also need to be made in the event that the Child Advocate did not receive the aforementioned documents from the DCYF, as averred to in their objection.

CONCLUSION

The plaintiffs respectfully request that the Child Advocate's Motion to Quash and/or Objection be denied or, alternatively, the plaintiffs be allowed to reissue the subpoena with the specificity and limitations noted herein.

Respectfully submitted this 25th day of July, 2008,

J.R., P.P.A. Molly Raymond and B.R., P.P.A.
Molly Raymond and Molly Raymond, Plaintiffs

/s/Thomas L. Mirza

Thomas L. Mirza, Esq. No. 5653
Pelletier & Mirza, LLP
469 Angell Street
Providence, RI 02906
(401) 861-1743
(401) 861-1746
tmirza@pmlawprov.com

**CERTIFICATION**

I hereby certify that I have electronically mailed a true copy of the Plaintiff's Memorandum of Law to the Rhode Island Child Advocate, John O. Pastore Complex, Louis Pasteur Bldg., 4th Floor, 57 Howard Ave., Cranston, RI 02920 at jalston@gw.doa.state.ri.us and Genevieve Allaire-Johnson, Esq., Spec. Asst. Attorney General, 150 South Main Street, Providence, RI 02903 at GAllaire@riag.ri.gov on this 25th day of July, 2008.

/s/Thomas L. Mirza