**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| J. R. a minor, P.P.A. MOLLY RAYMOND; B.R. a minor, P.PA. MOLLY RAYMOND<br><br>Plaintiffs<br><br>vs.<br><br>MARGARET GLORIA, Individually and in her Capacity as a Social Worker; STEPHANIE TERRY, Individually and in her Capacity as Supervisor; STATE OF RHODE ISLAND DEPT. of CHILDREN, YOUTH and FAMILIES; PATRICIA MARTINEZ, in her Capacity as the Director of the RHODE ISLAND DEPT. of CHILDREN, YOUTH and FAMILIES;<br><br>Defendants. | ) | C.A. No. 08-137S |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION IN LIMINE TO LIMIT THE TESTIMONY OF CHRISTINE BARRON, M.D.**

The plaintiffs are moving in limine to limit the expert testimony of Christine Barron, M.D. pursuant to Federal Rules of Evidence 702, 703 and 704.

Dr. Barron is a pediatrician. She has also completed a fellowship in child abuse and neglect. Her training is medically based as she testified to in her deposition. Also, according to her deposition, if she believed there were potential mental health issues with a child she evaluated, she would refer them to a psychiatrist or psychologist for further evaluation and treatment.

During her deposition plaintiff's counsel asked the following questions.

Question: Is it up to the psychiatrist or psychologist to further develop any mental health diagnosis with the children at that point in time?

Answer: Yes.

Question: So it's fair to say you're not in a position to make a diagnosis of PTSD, conduct disorder, or any other type of psychiatric disorders that the children may have?

Objection.

Answer: Yes.

The plaintiffs stipulate that her training and experience would allow her to testify regarding *medical* evaluations of children to determine physical or sexual abuse.[1] But mental health opinions are *admittedly* outside the scope her expertise.[2] Yet she makes numerous mental health and non-medical conclusions in her report.

Dr. Barron has provided the plaintiffs with her report pursuant to Federal Rules of Evidence 26(2)(B). In the report she provides eight conclusions. The plaintiffs aver that the following five conclusions (listed by how they appear in her report) clearly fall outside of Dr. Barron's training and education.

Conclusion 1. B.R. [sic] and J.R. [sic] were victims of chronic neglect, physical abuse and exposure to domestic violence, inappropriate sexual activity, alcohol abuse and substance abuse while in the care of their mother. *All of these things can[3] lead to severe mental illness in children, which can persist to adulthood.*

Dr. Barron's providing a mental health diagnosis/opinion. The DCYF has Dr. Penn to

[1] Dr. Barron did not conduct a physical examination or interview of the plaintiffs.

[2] This case differs significantly from the reasoning enunciated in Gaydar v. Sociedad Instituto Gineco-Quirurgico y Planificacion Familiar, 345 F.3d 15, (1st Cir. 2003) In that case the court allowed a general practitioner to render opinions on problems resulting from a pregnancy. The Court stated [T]he mere fact that Dr. Rodriguez was not a gynecologist does not mean that he was not qualified to give expert testimony regarding Gaydar's pregnancy. The proffered expert physician need not be a specialist in a particular *medical* discipline to render expert testimony relating to that discipline. Mitchell v. United States, 141 F.3d 8, 15 (1st Cir. 1998); Payton v. Abbott Labs, 780 F.2d 147, 155 (1st Cir. 1985). (Emphasis added). Here you have a medical doctor rendering psychiatric opinions, which she admits she is not qualified to make.

[3] The term "can" falls far short of the requisite "reasonable degree of medical certainty" required.

opine on this should he believe, as a psychiatrist, this exists.

Conclusion 2. Because of their severe *behavior problems*, B.R. and J.R. required *many different foster placements*. Foster families found them difficult and disruptive.

This is clearly not a *medically* based opinion, never mind that her facts are inaccurate. In 1994 the boys were removed because Molly placed a flip latch on their bedroom door so that Jeffery, their 4 year old brother, wouldn't try to pull them from their cribs in the early morning hours. The children were placed back with mom 30 days later. In May 1995 the boys were placed in a foster home because of a dispute between Molly and the DCYF over services they said she needed. They were returned in June. In July 1995 Molly requested that the children be placed with the DCYF (DCYF calls this a dependency). Due to domestic violence in her home and allegations of her lack of supervision, the children remained out until August 15, 1995. They were then placed in the Sykes home thirteen months later when Molly was arrested for a DUI. None of these removals were due to the severe behavior problems of the boys.

Conclusion 3. During the time the boys were in the Sykes home (eighteen months) *their behavior improved.*

This is not an expert opinion or medical diagnosis. Nor can this be causally related to a determination that Samuel Stevens abused the children.

Conclusion 5. The twins were removed from her care on several occasions due to child maltreatment.

This is not an expert opinion or medical diagnosis. What does this have to do with a pediatrician's medical evaluation of whether the children were physical or sexual abused at the hands of Samuel Stevens. This is another backdoor attempt to introduce inadmissible character evidence in violation of Federal Rules of Evidence 404(a)(3) and 608.

Conclusion 8. There is insufficient evidence to conclude that B.R. and J.R. were the victims of child maltreatment while placed within the Sykes foster home. It would also be impossible and *improper* to assign *their continued psychiatric illnesses and behaviors* on this placement given all the other circumstances of their lives as described above. *I conclude* that *there is no evidence that DCYF acted negligently* in the placement of Brandon and Jarrod Raymond into the Sykes foster home.

This opinion/conclusion is wrought with problems. Is "improper" a medical opinion? Then Dr. Barron again opines on the children's psychiatric illnesses of which she is unqualified. Then *she concludes* there is no evidence of *negligence* on the part of the DCYF. Dr. Barron is in no position to make these legal conclusions. This type of opinion may be admissible by a medical professional in a medical malpractice case pursuant to Federal Rules of Evidence 704(a), but not by a doctor when the issues pertain to DCYF placement decisions and the agency's policies.

## CONCLUSION

Dr. Barron is a pediatrician. She completed a fellowship in child abuse and neglect. Her training is medically based. Her testimony should be limited to whether or not she believes the plaintiffs were physically or sexually abused in the Sykes home. This is the only information Dr. Barron can supply that may assist the trier of fact, pursuant to Federal Rule of Evidence 702, in determining whether or not the boys were abused by Samuel Stevens in the Sykes home.

August 19, 2008

Respectfully submitted,
J. R., P.P.A. Molly Raymond and B.R.,
P.P.A. Molly Raymond, Plaintiffs

/s/Thomas L. Mirza
Thomas L. Mirza, Esq. No. 5653
Pelletier & Mirza, LLP
469 Angell Street
Providence, RI 02906
(401) 861-1743
(401) 861-1746
tmirza@pmlawprov.com

**CERTIFICATION**

I hereby certify that I have electronically mailed a true copy of the Plaintiff's Memorandum of Law in Support of their Motion to Limit The Testimony of Dr. Barron to Genevieve Allaire-Johnson, Esq., Spec. Asst. Attorney General, 150 South Main Street, Providence, RI 02903 at GAllaire@riag.ri.gov on this 19th day of August, 2008.

/s/Thomas L. Mirza