**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| J.R. a minor, P.P.A. MOLLY RAYMOND; B.R. a minor, P.P.A. MOLLY RAYMOND<br>Plaintiffs | ) | |
| V | ) | C.A. No. 08-137S |
| MARGARET GLORIA, Individually and in her Capacity as Social Worker; STEPHANIE TERRY, Individually and in her Capacity As Supervisor; STATE OF RHODE ISLAND DEPT. of CHILDREN, YOUTH and FAMILIES; Patricia Martinez, in her Capacity as Director of the RHODE ISLAND DEPT. of CHILDREN, YOUTH and FAMILIES<br>Defendants | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF CERTAIN WITNESSES PURSUANT TO FEDERAL RULES OF EVIDENCE 401, 404(a) AND 608**

The plaintiffs are moving in limine to exclude the testimony of six of the defendants' disclosed witnesses pursuant to Federal Rules of Evidence 401, 404(a) and 608. Each of these witnesses were involved with the plaintiffs or the plaintiffs' family in the years *preceding* their placement in the Sykes foster home and prior to Samuel Stevens' involvement with the children.

The plaintiffs claims of negligence and violations of their civil rights pursuant to 42 U.S.C. §1983 arise from the same facts and circumstances, all of which develop during their placement in the Sykes foster home. The five year old twins were placed in a foster home licensed by the DCYF to Faith Sykes and Marron Smith in November 1996. In 1997, Samuel Stevens (aka 'Thinman') was residing in the home and caring for the children on a regular basis. The DCYF's own records begin noting his involvement with

the children in November 1997.[1] In May 1998, personnel at the Gilbert Stuart School called the DCYF to report that the boys showed up for school with bruises on their arms. The twins independently told the CPI on two separate occasions that the bruises were from thinman hitting them with a belt in the basement of the foster home. The CPI found the belt where the boys told her it was. Stevens and Faith Sykes were indicated for abuse and institutional neglect, respectively.

The plaintiffs claim that the defendants, having *actual* knowledge of Steven's involvement with the children over at least a six month period, were negligent by allowing a stranger and unlicensed individual to care for the children and deliberately indifferent to a known risk of harm to the children and that they have suffered severe emotional injuries as a result of the abuse.

The defendants claim they were not negligent in the care of the twins while in the Sykes home, their civil rights were not violated as a result of that placement and that they suffered no emotional injuries during the placement. There is no counterclaim. The defendants now aver in their Pretrial Memorandum a duty to mitigate damages.

## ARGUMENT

The plaintiffs were cognizant of the likelihood that the defendants would attack the character of the Raymond family, and by association, the five year old plaintiffs. The plaintiffs anticipated this in their Pretrial Memorandum, noting the need to file a Motion in Limine regarding the testimony of Joseph Penn, M.D. He references any troubling

[1] There is some evidence that Stevens had been residing in the home since 1993.

Raymond family history as far back as 1985; but the defendants' attack on the character of the family now includes six other witnesses.

Three witnesses the defendants proffer, Margaret Renzi, Albert Rondina and Stephen Theriault were all involved in unfounded CANTS investigations regarding the twins *prior* to Stevens showing up in DCYF records.[2] None of these investigations relate to the defendants care of the children after Stevens involvement with the boys.

Mellissa Nathaniel is the caseworker assigned to the family *before* the placement in the Sykes home. Her involvement with the twins ends over a year before Stevens shows up in the records. A review of the synopsis of her testimony reveals nothing whatsoever related to the Sykes placement.

Natalie and Henry Heberman were foster parents for the twins in May of 1995, **for a total of four nights.** *The boys were not even three years old*.[3] And this placement was over two years before Stevens appears. How can any of these witnesses have relevant information regarding the plaintiffs' claims? This is simply an attempt to attack the character of the children and their family.

Character evidence is generally deemed inadmissible pursuant to Federal Rule of Evidence 404(a). The one exception regarding character evidence is Rule 404(a)(3) Character of Witness. It reads; [E]vidence of the character of a witness, as provided in rules 607, 608 and 609. Rules 607 and 609 are inapplicable to be proffered testimony herein.

[2] Investigator Jane Lopes is also listed regarding an investigation of Molly Raymond, but no date of this investigation is provided.

[3] During Jarrod's deposition he was asked about scratches on his face that were noted in 1993 records. He was born in August of 1992.

Federal Rule of Evidence 608 reads:

(a) Opinion and Reputation Evidence of Character. The credibility of a witness may be attached or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

(b) Specific Instances of Conduct. Specific instances of conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, or, in the discretion of the trial judge, evidence of prior similar false accusations, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for the truthfulness or untruthfulness, or (2) concerning the character for the truthfulness or untruthfulness of another witness as to which character the witness is being cross-examined has testified.

These rules do not support the admissibility of the testimony of Mellissa Nathaniel and the Hebermans. Their testimony relates to the behavior of the twins and circumstances involving their prior placements.[4] Furthermore, Federal Rule of Evidence 401 would preclude the testimony as irrelevant.

---

[4] The plaintiffs aver that information pertaining to the children's lives prior to placement in the Sykes home is relevant only in so far as the party's psychiatric experts' assessment of those factors when rendering their opinions. A review of Dr. Penn's expert report reveals great detail given to the family's history and his inclusion of that information in his opinions. Dr. Ramsey, the plaintiff's expert, will also review the plaintiffs' family

Rule 401 reads: "Relevant evidence" means evidence having any tendency to make existence of any fact *that is of consequence to the determination of the action* more probable or less probable than it would be without the evidence. Emphasis added.

Reiterating, the plaintiffs claim that the defendants, having *actual* knowledge of Stevens' involvement with the children over at least a six month period (November 1997 through May 1998), were negligent by allowing a stranger and unlicensed individual to care for the children and deliberately indifferent to a known risk of harm to the children and that they have suffered severe emotional injuries as a result of the abuse. What does the twins prior placements have to do with these claims?

The DCYF also avers that testimony pertaining to prior unfounded CANTS investigations by CPIs Margaret Renzi, Albert Rondina and Stephen Theriault are somehow relevant to why the DCYF let a stranger care for the children.

Margaret Renzi conducted two of these investigations. In January 1997, Molly Raymond reported that the boys were complaining of being hungry, forced to do push-ups and Jarrod had a bruise. The investigator believed at the time that the push-ups were not punishment related, the boys seemed well-kept and the bruise was accidental. In August 1997, the boys Children's Friends and Services counselor filed a CANTS report because the foster mother was inconsistent with bringing the boys to counseling and Jarrod had a bruise on his face that the foster father could not explain. This information has nothing to do with why Samuel Stevens was allowed to care for the children from November 1997 until their removal from the home in May 1998.

---

history in relationship to her opinions. Based on the plaintiffs' claims, this is the appropriate venue for the introduction of this evidence.

Investigators Stephen Theriault and Albert Rondina's reports are not even reflected in Margaret Gloria's case notes.

CONCLUSION

These witnesses can proffer no relevant evidence. The facts and circumstances of their involvement with the plaintiffs and their family has nothing to do with the plaintiffs' claims and is inadmissible pursuant to Federal Rule of Evidence 401. The DCYF is attempting to attack the character of the family and this type of character evidence is inadmissible whether the Court applies Fed. Rule of Evidence 404(a)(3) or 608. Wherefore, the plaintiffs move in limine to exclude the testimony of the aforementioned witnesses.

August 19, 2008

Respectfully Submitted,
J. R., P.P.A. Molly Raymond and B.R.,
P.P.A. Molly Raymond, Plaintiffs

/s/Thomas L. Mirza

Thomas L. Mirza, Esq. No. 5653
Pelletier & Mirza, LLP
469 Angell Street
Providence, RI 02906
(401) 861-1743
(401) 861-1746
tmirza@pmlawprov.com

**CERTIFICATION**

I hereby certify that I have electronically mailed a true copy of the Plaintiff's Memorandum of Law in Support of their Motion to Exclude The Testimony of Certain Witnesses to Genevieve Allaire-Johnson, Esq., Spec. Asst. Attorney General, 150 South Main Street, Providence, RI 02903 at GAllaire@riag.ri.gov on this 19th day of August, 2008.

/s/Thomas L. Mirza