**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| J. R., a minor, P.P.A. MOLLY RAYMOND; B.R. a minor, P.P.A. MOLLY RAYMOND, and MOLLY RAYMOND; | ) | |
| Plaintiffs | ) | |
| vs. | ) | C.A. No. 08-137S |
| MARGARET GLORIA, Individually and in her Capacity as a Social Worker; STEPHANIE TERRY, Individually and in her Capacity as Supervisor; STATE OF RHODE ISLAND DEPT. of CHILDREN, YOUTH and FAMILIES; PATRICIA MARTINEZ, in her Capacity as the Director of the RHODE ISLAND DEPT. of CHILDREN, YOUTH and FAMILIES; | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IIN SUPPORT OF THEIR OBJECTION TO THE DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF DR. REBECCA RAMSEY**

The defendants have moved to exclude the expert testimony of Dr. Rebecca Ramsey on the grounds that her methodology in developing her opinions is not valid, that she utilizes hearsay statements in developing her opinions, concludes that the children were abused in the Sykes home and avers that future inpatient treatment is likely for the children. None of the aforementioned grounds merits the exclusion of Dr. Barron's testimony or the need for a Daubert hearing.

**I. Dr. Ramsey's Qualifications**

Dr. Ramsey provided a comprehensive sixty-plus page report which incorporated opinions requested by the plaintiffs; what is her opinion as to the current psychological

condition of the twins. Dr. Ramsey has been a licensed Massachusetts psychiatrist for twenty-two years. She received her medical degree from Tufts University School of Medicine and completed a child psychiatry fellowship through Cambridge Hospital, Cambridge, MA. In addition she started an adolescent in-patient unit at Central Hospital in Somerville, MA., and consulted to the Adolescent Medical Clinic at Cambridge Hospital. As a full time clinician she has treated hundreds of adolescent and adult sexual abuse trauma victims during her career.

As such, Dr. Ramsey is qualified under Fed. Rule 702 to provide expert psychiatric testimony. The trial court needs to determine that the witness is qualified as an expert by knowledge, skill, experience, training, or education and the court has wide latitude under Fed. Rule 702 in determining expert qualifications. U.S. v. Vargas, 471 F.3d 255, 261-262 (Fed. 1st Cir. 2006) It is hard to fathom that a psychiatrist with over twenty years of clinical experience in adolescent psychiatry is unqualified to make a psychiatric diagnosis of the plaintiffs.

Furthermore, court's have interpreted Fed. Rule 702 to require that the proponent of an expert witness demonstrate the expert's "liberal minimum qualifications." Kannankeril v. Terminix Int., Inc., 128 F. 3d 802, 809 (3rd. Cir. 1997) Dr. Ramsey's education, training and experience far exceeds what would constitute a psychiatrist with minimum qualifications.[1] Once a court is satisfied with an expert's education, training and experience, and the expert's testimony is reasonably based on that education, training and experience, the court has no obligation to conduct a preliminary hearing. United States v. Evans, 272 F.3d 1069, 1094 (8th

[1] The Rhode Island Supreme Court has stated that a trail justice's ruling on the admissibility of an expert witness's proffered testimony "will be sustained provided the discretion has been soundly and judicially exercised, that is, if it has been exercised in the light of reason applied to all the facts and with a view to the rights of all the parties to the action **** and not arbitrarily or willfully, but with just regard to what is right and equitable under the circumstances and the law." Morra v. Harrop, 791 A.2d 472, 477 (RI 2002).

Cir. 2001) When objectively reviewing Dr. Ramsey's education, training and experience, having a Daubert hearing would simply result in a waste of the court's time and result in significant and unnecessary additional expense for the plaintiffs.

**II. Dr. Ramsey's Methodology and Conclusions**

In order to develop these opinions Dr. Ramsey utilized most, if not all of the same information utilized by the defendants' psychiatrist, Dr. Joseph Penn in creating his opinions. As she stated in her deposition "This is a report that reviews the history of the twins with all the information that's available about them from DCYF records, all mental health records, depositions, discussions with doctors and my interviews with them to evaluate their psychiatric condition." (Deposition page 12, lines 2-6).

The defendants claim in their Motion that Dr. Ramsey did not follow standard protocols that conform to community and national standards. Yet their motion is totally devoid of a single standard that they claim she did not follow. They speak in general terms only. They claim that her evaluation is not a true "forensic" evaluation, but again state no specific protocol violations.[2] The defendants claim Dr. Ramsey's conclusions that the twins were abused are no different than a layman's opinion, again omitting any psychiatric support or specific protocol reference for this proposition.

Furthermore the defendants' complaints ignore the fact that a diagnosis of PTSD first requires an assessment, based on the record as a whole, as to whether a trauma occurred.

[2] The defendants are trying to differentiate between a "forensic evaluation" and a "clinical evaluation." It is preposterous to claim that a clinical diagnosis is any less reliable than a so-called forensic diagnosis. Psychiatrists evaluate patients to determine psychiatric illnesses. The eventual use of the diagnosis, either for treatment or testimony in Court, should make no difference to a mental health professional. The goal is an "accurate assessment" of the patient's mental health. Are the defendants implying that all patients need to be forensically evaluated in order to get an accurate diagnosis?

Without a finding of trauma, there can be no PTSD diagnosis. Dr. Ramsey's opinion is, after having thoroughly reviewed the history of the twins, including all the of the DCYF records, numerous mental health records, depositions, discussions with the twins doctors and interviews with the children, that the children were physically and sexually abused in the Sykes home.[3] This is how psychiatrists determine the validity of PTSD diagnosis.

The remainder of the defendants' motion is no more than an attack on Dr. Ramsey's conclusions and their disagreement with the significance of the factors she incorporates in her conclusions. The case law is clear that all of these claims go to the weight of Dr. Ramsey's testimony and not to its' admissibility. "When the (alleged) factual underpinning of an expert is weak, it is a matter affecting the weight and credibility of the testimony, which is a question to be resolved by the jury." Newell Puerto Rico, Ltd. v. Rubbermaid Inc., 20 F.3d 15, 21 (1st Cir. 1994) Cross examination of the expert, not the exclusion of the testimony, is the proper means of addressing questionable opinions. "This Court has made clear that [a]s long as an expert's scientific testimony rests upon good grounds, based on what is known, it should be tested by the adversary process-competing expert testimony and active cross-examination-rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies. U.S. v.Vargas, infra at 265.

The defendants' argument about the use of hearsay in developing Dr. Ramsey's expert opinions is also without merit. "Federal Rule of Evidence 703, the rule governing the appropriate bases of expert testimony, specifically contemplates, in its advisory committee notes, reliance on "reports and opinions from nurses, technicians and other doctors." Walker v. Soo Line Railroad Co., 208 F.3d 581, 586 (7th Cir. 2000) In addition, the rule notes the use

[3] It must me noted that at least three other psychiatrists who have evaluated the twins since their removal from the Sykes home have independently diagnosed the boys with PTSD. This diagnosis has been incorporated in the treatment of the twins over the last decade. Much of the factual history utilized in their diagnosis was provided to the evaluators by the DCYF.

of hearsay in expert opinions generally. See, Fed. R. Evid. 703 ("If [the underlying facts or data are] of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted.").

## CONCLUSION

Dr. Ramsey is qualified under Fed. Rule 702 to provide expert psychiatric testimony. She has the appropriate education, training and experience to render opinions related to the plaintiffs' mental health. This precludes the need to conduct a time consuming and expensive Daubert hearing. Her opinions were reached after having thoroughly reviewed the history of the twins, including all the of the DCYF records, numerous mental health records, depositions, discussions with the twins' doctors and interviews with the children. This is the appropriate methodology for developing the psychiatric diagnosis contained in her opinions. The defendants cite no specific protocol to the contrary. Any issues the defendants have relating to the specifics of her conclusions should be addressed through cross-examination and not the exclusion of her testimony.

Respectfully submitted this 29th day of August, 2008,

J.R., P.P.A. Molly Raymond and B.R., P.P.A.
Molly Raymond and Molly Raymond, Plaintiffs

/s/Thomas L. Mirza
Thomas L. Mirza, Esq. No. 5653
Pelletier & Mirza, LLP
469 Angell Street
Providence, RI 02906
(401) 861-1743
(401) 861-1746
tmirza@pmlawprov.com

**CERTIFICATION**

I hereby certify that I have electronically mailed a true copy of the Plaintiff's Memorandum in Support of their Objection to the Defendants' Motion to Exclude The Testimony of Dr. Rebecca Ramsey to Genevieve Allaire-Johnson, Esq., Spec. Asst. Attorney General, 150 South Main Street, Providence, RI 02903 at GAllaire@riag.ri.gov on this 29th day of August, 2008.

/s/Thomas L. Mirza